HAROLD W. BROBECK, ET AL, [1] Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent Brobeck v. Commissioner
Docket Nos. 7849-76, 7309-77, 7424-77.
United States Tax Court
T.C. Memo 1980-239; 1980 Tax Ct. Memo LEXIS 345; 40 T.C.M. (CCH) 594; T.C.M. (RIA) 80239; July 8, 1980, Filed Harold W. Brobeck, pro se. Joseph M. Abele, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in income tax and additions to tax against petitioner *347 as follows: Docket
Taxable
Deficiency
No.
Petitioner
Year
in Tax
7849-76
Harold W.
Brobeck
1972
$23,353.75
7309-77
Harold W.
Brobeck,
1/1/71 to
transferee
7/19/71
$13,075.84
7424-77
Harold W.
Brobeck
1970
$28,442.10
1971
69,498.73
1973
61,529.34
1974
31,987.80
Addition
Addition
Docket
to Tax
to Tax
No.
Sec. 6653(b) [2]
Sec. 6654
7849-76
$11,676.88
0
7309-77
$ 6,537.92
0
7424-77
$14,221.05
$ 907.19
34,739.48
2,202.67
30,764.67H1,961. 38
15,993,90
1,020.78
Concessions having been made by respondent, six issues remain to be decided: (1) Whether documents filed by petitioner with the District Director of Internal Revenue, Pittsburgh, Pennsylvania, constitute Federal income tax returns for the taxable years 1970, 1971, 1972, 1973, and 1974; (2) Whether the statute of limitations bars assessment and collection of the tax and additions to the tax from petitioner for the taxable years 1970 through 1974 or from Beaver Valley Volkswagen, Inc., for its taxable year 1971; (3) *348 Whether petitioner has proved that there is no deficiency in tax for the taxable years 1970 through 1974 or that the addition to tax under section 6654 was improperly determined; (4) Whether respondent has proved that petitioner is a transferee of property of Beaver Valley Volkswagen, Inc.; (5) Whether respondent has proved that any part of any underpayment of tax is due to fraud as provided by section 6653(b); and (6) Whether petitioner's various constitutional arguments are meritorious. FINDINGS OF FACT None of the facts in these three consolidated cases have been stipulated. In each case, respondent prepared, filed, and served a request for admissions pursuant to Rule 90, Tax Court Rules of Practice and Procedure. Also, in docket No. 7849-76, respondent prepared, filed, and served a request for additional admissions pursuant to the same rule. Petitioner prepared, filed, and served responses to the four requests. Each response was substantially the same, consisting of a statement to the effect that, after reasonable inquiry, petitioner lacked the information or knowledge to admit or deny any of the requested admissions; therefore, petitioner denied each and every requested *349 admission. Pursuant to Rule 90(d), Tax Court Rules of Practice and Procedure, respondent filed a motion in each of these three consolidated cases asking this Court to review the sufficiency of petitioner's answers and to order that all of the requested admissions be deemed admitted. The motions were set for hearing in Washington, D.C., on August 23, 1978. Petitioner filed motions for a thirty-day continuance of the hearing, averring that he had answered the requests in good faith and was continuing to search for his books and records. We denied petitioner's motions for continuance upon a showing by respondent that petitioner had not made a good faith attempt to answer the requests for admission, that petitioner's motions for continuance were filed as a tactic for delay, and that the granting of petitioner's motions would have delayed the hearing beyond the date set for trial of the cases. [3] We granted respondent's motions to review the sufficiency of petitioner's answers to the requested admissions. After thoroughly reviewing both the requested admissions and petitioner's answers thereto, we ordered that the requested admissions be deemed admitted. The admissions and the exhibits *350 attached thereto are incorporated herein by this reference. For the taxable years 1968 and 1969, petitioner and his wife filed joint Federal income tax returns. They reported adjusted gross income for those years in the respective amounts of $33,332 and $42,783, which amounts included wages, dividend and interest income, and income from rental property. On the income tax return for 1968, petitioner and his wife claimed a short-term capital loss and two long-term capital losses. On the return for 1969 they claimed a long-term capital loss. For the taxable years 1970 through 1974, petitioner submitted certain documents to *351 the District Director of Internal Revenue, Pittsburgh, Pennsylvania, as his Federal income tax returns and amended returns. The documents submitted by petitioner for the taxable years 1970 through 1974 are described below. On April 9, 1971, petitioner submitted an eighty-page document to Teller No. 1 for the District Director of Internal Revenue, Pittsburgh, Pennsylvania. The first pages of the document contain most of the first page of Form 1040, U.S. Individual Income Tax Return, which has been cut into three segments and interrupted by text. The segments of the form contain petitioner's name, address, social security number, and occupation (self-employed). No income from wages, dividends, or interest is reported, but $1,700 of "other income" is reported. No deductions or credits are set forth. An amount of tax is computed accordingly. The signature box from the Form 1040 is appended and signed by petitioner, but without any declaration under penalty of perjury as to the truth, correctness, or completeness of the document. Beneath petitioner's signature appeared the following: TO THE DISTRICT DIRECTOR OF INTERNAL REVENUE
Sir: Please answer the questions raised in *352 the foregoing return fully in writing by return mail. If you or any of your agents have any further questions please write. Thanking you in advance for your kind cooperation I remain, Very truly yours, /s/ Harold W. Brobeck In addition to the fragmented Form 1040, the first ten pages of the document contain quotations from "the First Coinage Act of April 2, 1972," arguments concerning the definition of a "dollar," arguments concerning the validity of Federal Reserve Notes as legal tender, excerpts from the the Constitution of the United States, excerpts from the Constitution of the State of Minnesota, and arguments under the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States concerning the reasons why petitioner need not fill out a Form 1040 as designed by the Treasury Department. On page four of the document, the amount of "other income" reported by petitioner was explained as follows: The money of account of the United States as expressed in Dollars or Units, dimes or tenths, cents or hundredths, and mills or thousandths, as coined by Congress with Congress fixing the Standard of weights and measures thereof for the year in question *353 are as follows: Gold Eagles, Units or Dollars
No. None
$ None
Silver Dollars
No. None
$ None
Silver Half Dollars
No. 1,000
$500.00 Actual
Silver Quarters
No. 3,000
$750.00 Actual
Silver Half Dimes
No. None
$ None
Nickles
No. 2,000
$100.00 Guess only
Pennies or Cents
No. 5,000
$ 50.00 Guess only
Silver Dimes
No. 3,000
$300.00 Actual
TOTAL INCOME AS EXPRESSED IN MONIES OF ACCOUNT OF THE U.S. $1,700.00 Appended to the foregoing document are the following: excerpts from judicial opinions, a purported transcript of court proceedings, a quotation from Henry David Thoreau, and a copy of "The Daly Eagle" dated February 7, 1969, which contains documents alleged to be opinions of a justice of the peace of the State of Minnesota. The foregoing document purported to be petitioner's Federal income tax return for the taxable year 1970, but it did not constitute such a return. On March 8, 1972, petitioner submitted a ninety-page document to Teller No. 1 for the District Director of Internal Revenue, Pittsburgh, Pennsylvania. The cover page is a Form 1040, U.S. Individual Income Tax Return, which contains petitioner's name, address, social security *354 number, occupation (businessman), claim of exemptions, and signature. No income from wages, dividends, or interest is reported, but $4,127.25 of "other income" is reported. No deductions or credits are set forth. An amount of tax is computed accordingly. The perjury clause above petitioner's signature is obliterated. Appended to the Form 1040 are pages of text which are substantially the same as those which accompanied the segments of petitioner's Form 1040 in the document submitted for the previous taxable year. On page five of the document, the amount of "other income" reported by petitioner was explained as follows: The money of Account of the United States as expressed in Dollars or Units, dimes or tenths, cents or hundredths, and mills or thousandths, as coined by Act of Congress with the standard of the weights and measures of the precious metals, gold and silver therein fixed by act of Congress received by the undersigned for the year in question are as follows: Gold Eagles, Units or Dollars
No. [None]
$ [None]
Silver Dollars
No. 75
$ 75.00
Silver Half Dollars
No. 1,050
$ 525.00
Silver Quarters
No. 8,101
$2,025.05
Silver Half Dimes
No. [None]
$ [None]
Nickles
No. [None]
$ [None]
Pennies or cents
No. [None]
$ [None]
Silver Dimes
No. 15,020
$1,502.00
*355 TOTAL INCOME AS EXPRESSED IN MONIES OF ACCOUNT OF THE U.S. § 4,127.25 Petitioner signed the document a second time, again not under penalty of perjury. Beneath petitioner's signature appeared the following: TO THE DISTRICT DIRECTOR OF INTERNAL REVENUE
Sir: Please answer the questions raised in the foregoing return fully in writing by return mail. If you or any of your agents have any further questions please write. Tanking you in advance for your kind cooperation I remain, Very truly yours, Also appended to the foregoing document are the following: a copy of photographs of each side of a "Spanish Milled Dollar" with caption and a copy of "The Daly Eagle" dated May 1, 1971, which contains documents alleged to be opinions of a justice of the peace of the State of Minnesota. The foregoing document purported to be petitioner's Federal income tax return for the taxable year 1971, but it did not constitute such a return. On March 13, 1973, petitioner submitted an eighty-four page document to Teller No. 3 for the District Director of Internal Revenue, Pittsburgh, Pennsylvania. The cover page is a Form 1040, U.S. Individual Income Tax Return, which contains petitioner's *356 name, address, and claim of exemptions. A social security number is given, but it is a different number than that used on petitioner's Federal income tax returns for 1968 and 1969. The cover page is notarized but not signed. No income from wages, dividends, or interest is reported, nor is any amount of "other income." Nevertheless, a total amount of income, $4,005, is reported. No deductions or credits are set forth. An amount of tax is computed accordingly. Appended to the Form 1040 were the following: a signed and notarized "Petition and Protest," and items substantially the same as those appended to the documents submitted by petitioner on April 9, 1971, and March 8, 1972. On pages 10 and 11 of the "Petition and Protest," the amount of total income reported by petitioner was explained as follows: That 31 United States Code Section 371 provides as follows: "The money of account of the United States shall be expressed in Dollars or Units, dimes or tenths, cents or hundredths, and mills or thousandths, a dime being the tenth part of a dollar, a cent the hundredth part of a dollar, a mill the thousandth part of a dollar; and all accounts in the public offices and all proceedings *357 in the courts shall be kept and had in conformity to this regulation. R.S. Sec. 3563 - Act April 2, 1792. Sec. 20. That pursuant thereto and pursuant to the Constitution of the United States, during the year 1973, the Undersigned received the following amounts in the monies of account of the United States: In gold Units or Dollars
$ [None]
In Silver Dollars or Units
$ 340.00
In Silver Half Dollars
$2,000.00
In Silver Quarter Dollars
1,500.00
In Silver Dimes
$ 165.00
TOTAL INCOME EXPRESSED
IN THE MONIES OF ACCOUNT
OF THE UNITED STATES
$4,500.00
To make it perfectly clear, the above does not include the receipt of Federal Reserve Notes or other Bank Checks or paper money of any kind or nature not redeemable in specie, nor does the 1040 form annexed hereto include any paper so-called money or Federal Reserve Notes. As the Dollar Sign, "$", is used on the return, the undersigned interprets that to mean the monies of account of the United States as expressed in gold and silver coin. The "Petition and Protest" was signed by petitioner and his signature was notarized, but the document was not signed under penalty of perjury. The Commissioner retained *358 the Form 1040 but returned the rest of the document to petitioner. On May 30, 1973, petitioner submitted two documents to Teller No. 4 for the District Director of Internal Revenue, Pittsburgh, Pennsylvania. The first document was essentially identical to the one submitted on March 13, 1973, except that it added a "Petition for Redress of Grievances and Promise to Satisfy IRS If They Can Assure Me of Not Violating My Constitutional Rights." The second document was essentially identical to the one submitted on March 13, 1973, except that the Form 1040 differed from the one submitted on March 13, 1973, in three respects: (1) it was signed under penalty of perjury and notarized on May 29, 1973; (2) it contained a reference to the "Petition and Protest" wherein petitioner had invoked the Fifth Amendment privilege against self-incrimination; and (3) it bore the handprinted word "amended" at the top of the page. The foregoing documents submitted by petitioner purport to be his Federal income tax return as amended for the taxable year 1972, but they do not constitute such a return. On March 29, 1974, petitioner submitted a seventy-seven page document to Teller No. 2 for the District *359 Director of Internal Revenue, Pittsburgh, Pennsylvania. The cover page is a Form 1040, U.S. Individual Income Tax Return, which contains petitioner's name, address, claim of exemptions, and signature. A social security number is given, but it is a different number than that used on petitioner's Federal income tax returns for 1968 and 1969. No income from wages, dividends, or interest is reported, nor is any amount of "other income." Nevertheless, a total amount of income, $3,800, is reported as adjusted gross income. No deductions or credits are set forth. An amount of tax is computed accordingly. The Form 1040 is signed by petitioner and his signature is notarized, but the words "Under penalties of perjury" are obliterated above petitioner's signature. Appended to the Form 1040 were the following: a "Petition and Protest" and a copy of "The Daly Eagle" dated February 7, 1969, the contents of which are described above. On pages 10 and 11 of the "Petition and Protest," the following appear: That 31 United States Code Section 371 provides as follows: "The money of account of the United States shall be expressed in Dollars or Units, dimes or tenths, cents or hundredths, and mills *360 or thousandths, a dime being the tenth part of a dollar, a cent the hundredth part of a dollar, a mill the thousandth part of a dollar; and all accounts in the public offices and all proceedings in the courts shall be kept and had in conformity to this regulation. R.S. Sec. 3563 - Act April 2, 1792. Sec. 20. That pursuant thereto and pursuant to the Constitution of the United States, during the year 1973, the Undersigned received the following amounts in the monies of account of the United States: In gold Units or Dollars
$ [None]
In Silver Dollars or Units
$ [None]
In Silver Half Dollars
$ [None]
In Silver Quarter Dollars
$ [None]
In Silver Dimes
$ 126.00
TOTAL INCOME AS EXPRESSED
IN THE MONIES OF ACCOUNT
OF THE UNITED STATES
$ 126.00 U.S. Silver Coins
To make it perfectly clear, the above does not include the receipt of Federal Reserve Notes or other Bank Checks or paper money of any kind or nature not redeemable in specie, nor does the 1040 form annexed hereto include any paper so-called money or Federal Reserve Notes. As the Dollar Sign, "$", is used on the return, the undersigned interprets that to mean the monies of account of the *361 United States as expressed in gold and silver coin. The amount so reported does not coincide with the amount reported as adjusted gross income on the Form 1040, but rather coincides with the amount of tax calculated by petitioner on the Form 1040. The "Petition and Protest" was signed by petitioner and his signature was notarized, but the document was not signed under penalty of perjury. On April 4, 1974, petitioner submitted a ninety-six-page document to Teller No. 2 for the District Director of Internal Revenue, Pittsburgh, Pennsylvania. It differed from the document submitted on March 29, 1974, in three respects. First, two additions had been made to the Form 1040: (1) it bore the handprinted words "amended return" at the top of the page; and (2) it bore the legend "All information appearing herein submitted under PROTEST as being contrary to the Fifth (5th) Amendment." Second, the amounts reported on pages 10 and 11 of the "Petition and Protest" were changed as follows to coincide with the amount of adjusted gross income shown on the Form 1040: In gold Units or Dollars
$ [None]
In Silver Dollars or Units
$ 500.00
In Silver Half Dollars
$1,500.00
In Silver Quarter Dollars
$1,000.00
In Silver Dimes
$ 800.00
TOTAL INCOME AS EXPRESSED IN
THE MONIES OF ACCOUNT OF THE
UNITED STATES
$3,800.00
*362 Third, a number of reprinted newspaper and magazine articles, court opinions, and other miscellaneous documents were appended to the Form 1040. By letter dated April 16, 1974, the Acting District Director of Internal Revenue, Pittsburgh, Pennsylvania, notified petitioner that the documents submitted by him as Federal income tax returns for the taxable year 1973 did not constitute Federal income tax returns. Pertinent parts of sections 6011, 6012, 6065, and 7203 were set forth to clarify petitioner's legal obligations. On August 10, 1976, petitioner submitted a fourteen-page document to Teller No. 4 for the District Director of Internal Revenue, Pittsburgh, Pennsylvania. The document consists of a Form 1040, U.S. Individual Income Tax Return, to which is appended a copy of the opinion of the Supreme Court in Garner v. United States, 424 U.S. 648 (1976). This Form 1040 materially differs from the ones previously submitted in two respects: (1) the legend "Asserting in good faith (5th) Fifth Amendment object to self-incrimination" appears on lines 27 through 65 of page 2, Form 1040; and (2) the legend "All information appearing here in [sic] submitted under protest *363 as being contrary to the Fifth (5th) Amendment. I Harold W. Brobeck don't understand this Form 1040 Supreme Court. Note: See "Garner v. United States" cite as 96 Supreme Court Number 74-100, 1178, Decided March 23, 1976, attached hereto." This Form 1040 is signed by petitioner, but the words "penalties of perjury" are obliterated. By letter dated January 4, 1977, the Commissioner again notified petitioner that the documents submitted by him for the taxable year 1973 did not constitute a Federal income tax return. The foregoing documents submitted by petitioner purport to be his Federal income tax return, as amended, for the taxable year 1973, but they do not constitute such a return. On March 20, 1975, petitioner submitted a 106-page document to Teller No. 3 of the District Director of Internal Revenue, Pittsburgh, Pennsylvania. The cover page is a Form 1040, U.S. Individual Income Tax Return, which contains petitioner's name, address, occupation (businessman), claim of exemptions, and signature. Petitioner's social security number is listed as "unknown." No income from wages, dividends, or interest is reported, but $2,159 of "other income" is reported. No deductions or credits *364 are set forth. An amount of tax is computed accordingly. The Form 1040 is signed under penalties of perjury pursuant to the unaltered clause provided on that form. The Form 1040 bears the following legend: "All information appearing here in submitted under 'Protest' as being contrary to the Fifth (5th) Amendment." Appended to the Form 1040 are the following: a "Petition and Protest," a copy of "The Daly Eagle" dated February 7, 1969, the contents of which are described above, and miscellaneous documents including reprinted newspaper and magazine articles, court opinions, and other items not substantially different from those submitted on April 4, 1974. On pages 12 and 13 of the "Petition and Protest," the following appeared: That 31 United States Code Section 371 provides as follows: "The money of account of the United States shall be expressed in Dollars or Units, dimes or tenths, cents or hundredths, and mills or thousandths, a dime being the tenth part of a dollar, a cent the hundredth part of a dollar, a mill the thousandth part of a dollar; and all accounts in the public offices and all proceedings in the courts shall be kept and had in conformity to this regulation." R. *365 S.Sec. 3563 - Act April 2, 1792. Sec. 20. That pursuant thereto and pursuant to the Constitution of the United States, during the year 1974, the Undersigned received the following amounts in the monies of account of the United States: In gold Units or Dollars
$ [None]
In Silver Dollars or Units
$ [None]
In Silver Half Dollars
$ 119.00
In Silver Quarter Dollars
$ 540.00
In Silver Dimes
$1,500.00
TOTAL INCOME AS EXPRESSED IN
THE MONIES OF ACCOUNT OF THE
UNITED STATES
$2,159.00
To make it perfectly clear, the above does not include the receipt of Federal Reserve Notes or other Bank Checks or paper money of any kind or nature not redeemable in specie, nor does the 1040 form annexed hereto include any paper so-called money or Federal Reserve Notes. As the Dollar Sign, "$", is used on the return, the undersigned interprets that to mean the monies of account of the United States as expressed in gold and silver coin. The "Petition and Protest" was signed by petitioner and his signature was notarized, but the document was not signed under penalty of perjury. By letter dated April 23, 1975, the Director of the Internal Revenue Service Center for the *366 Mid-Atlantic Region notified petitioner that the document submitted by him as a Federal income tax return for the taxable year 1974 did not constitute a Federal income tax return. Pertinent parts of sections 6011, 6012, and 7203 were set forth to clarify petitioner's legal obligations, and the case of United States v. Porth,426 F.2d 519 (10th Cir. 1970), was cited. Petitioner replied by letter dated May 23, 1975, in which further arguments were presented concerning the validity of the Federal Reserve System and the propriety of equating the receipt of Federal Reserve Notes with the receipt of income for purposes of Federal income taxation. On June 7, 1976, petitioner submitted a fourteen-page document to Teller No. 3 for the District Director of Internal Revenue, Pittsburgh, Pennsylvania. The document consists of a Form 1040, U.S. Individual Income Tax Return, to which is appended a copy of the opinion of the Supreme Court in Garner v. United States, 424 U.S. 648 (1976). This Form 1040 materially differs from the ones previously submitted in two respects: (1) the legend "Fifth Amendment object to self-incrimination" appearing on lines 28 through *367 65 of page 2, Form 1040; and (2) the legend "I Harold W. Brobeck do not understand this Form 1040. All information appearing here in submitted under protest as being contrary to the Fifth (5th) Amendment. Note See Roy D. Garner, petitioner v. United States, attached hereto and other material consisting of     pages", appearing on page 1, Form 1040. This Form 1040 is signed under penalties of perjury pursuant to the unaltered clause provided on that form. The foregoing documents submitted by petitioner purport to be his Federal income tax return, as amended, for the taxable year 1974, but they do not constitute such a return. Petitioner Harold W. Brobeck failed to file Federal income tax returns for the taxable years 1970, 1971, 1972, 1973, and 1974. He resided in Beaver, Pennsylvania, when he filed his petitions in these proceedings. Beaver Valley Volkswagen, Inc., was incorporated under the laws of Pennsylvania on October 31, 1963. Pursuant to a Volkswagen Dealer Agreement dated January 2, 1970, Volkswagen Atlantic, Inc., appointed Beaver Valley Volkswagen, Inc., as a Volkswagen dealer for the period January 1, 1970, through December 31, 1971. Beaver Valley Volkswagen, *368 Inc., operated as a Volkswagen dealer during the period January 1, 1970, through July 19, 1971. As of July 19, 1971, Beaver Valley Volkswagen, Inc., was dissolved and liquidated. Beaver Valley Volkswagen, a sole proprietorship, began its operation as a Volkswagen dealer on July 20, 1971, and continued that operation through the end of 1974. During 1971, Beaver Valley Volkswagen operated under the Volkswagen dealer agreement between Volkswagen Atlantic, Inc., and Beaver Valley Volkswagen, Inc. The official appointment of Beaver Valley Volkswagen as a Volkswagen dealer occurred in the Volkswagen dealer agreement covering the period January 1, 1972, through December 31, 1973. That appointment was renewed for the period January 1, 1974, through December 31, 1974. During all of 1970 and through July 19, 1971, petitioner was president of Beaver Valley Volkswagen, Inc., and owned a 73 percent interest in that corporation. During that same period, petitioner's wife was vice president of Beaver Valley Volkswagen, Inc., and owned a 27 percent interest in that corporation. From July 20, 1971, to the end of 1974, petitioner was the sole proprietor of Beaver Valley Volkswagen. Beaver *369 Valley Volkswagen, Inc., filed a U.S. Corporation Income Tax Return for the taxable year 1970 in which it showed gross sales of $11,877,891 and taxable income of $39,904. For the taxable year 1970, petitioner received compensation in the amount of $18,900 from Beaver Valley Volkswagen, Inc. Beaver Valley Volkswagen, Inc., failed to file a U.S. Corporation Income Tax Return for the taxable year 1971, or for a short taxable year ending July 19, 1971, or for any taxable period which would reflect the income, deductions, and credits attributable to operations from January 1, 1971, through July 19, 1971. Beaver Valley Volkswagen, Inc., had taxable income of $40,783 for the period January 1, 1971, through July 19, 1971, which results in tax due of $13,075.84. No portion of the tax due from Beaver Valley Volkswagen, Inc., has been paid. When Beaver Valley Volkswagen, Inc., was liquidated, all of the assets in that corporation were transferred to petitioner without consideration therefor. The fair market value of the assets transferred to petitioner exceeded the amount of tax due from the corporation, plus the amount of any alleged addition to the tax, plus any interest thereon. By *370 reason of the transfer of assets by Beaver Valley Volkswagen, Inc., to petitioner, that corporation became insolvent and without assets with which to pay the tax due or any additions to the tax or interest thereon. When Beaver Valley Volkswagen, Inc., was liquidated on that date its shareholders realized a long-term capital gain in the amount of $139,111.16 and after the deduction allowable in section 1202, $69,555.58 is taxable to them in 1971. Petitioner owned 73 percent of the stock, thus realizing a long-term capital gain in the amount of $50,775.57. Petitioner realized net income (loss) from the operation of Beaver Valley Volkswagen as a proprietorship as follows: Taxable Year
Net Income (Loss)
1971 (7/20/71 - 12/31/71)
[1,284.02)
1972
18,041.00
1973
73,370.72
1974
22,938.86
During 1970 and 1971, petitioner and his wife jointly owned rental properties at the following addresses: 294 State Street, Beaver, Pa. 1202 Third Street, Beaver Boro, Pa. 659-671 Third Street, Beaver Boro, Pa. 361 East End Avenue, Beaver Boro, Pa. 338 East End Avenue, Beaver Boro, Pa. 145 Adams Street, Rochester Boro, Pa. 157 Adams Street, Rochester Boro, *371 Pa. 201 Brighton Avenue, Rochester Boro, Pa. 410 Pine Grove, Industry Boro, Pa.
1440 Fourth Avenue, Freedom, Pa. 1631-1633 Washington Avenue, Monaca, Pa. 1612 Beaver Avenue, Monaca, Pa. During 1972, petitioner and his wife jointly owned rental properties at the following addresses: 1202 Third Street, Beaver Boro, Pa. 659-671 Third Street, Beaver Boro, Pa. 361 East End Avenue, Beaver Boro, Pa. 338 East End Avenue, Beaver Boro, Pa. 145 Adams Street, Rochester Boro, Pa.
157 Adams Street, Rochester Boro, Pa. 1440 Fourth Avenue, Freedom, Pa. 1631-1633 Washington Avenue, Monaca, Pa. 1612 Beaver Avenue, Monaca, Pa. During 1973 and 1974, petitioner and his wife jointly owned rental properties at the following addresses: 1202 Third Street, Beaver Boro, Pa. 659-671 Third Street, Beaver Boro, Pa. 361 East End Avenue, Beaver Boro, Pa. 338 East End Avenue, Beaver Boro, Pa. 145 Adams Street, Rochester Boro, Pa. 157 Adams Street, Rochester Boro, Pa. 1440 Fourth Avenue, Freedom, Pa. 1631-1633 Washington Avenue, Monaca, Pa. 1612 Beaver Avenue, Monaca, Pa.
The net income from rental of the foregoing properties during the years in *372 issue was as follows: Years
Net Income
1970
$ 40,544.98
1971
38,891.55
1972
31,709.88
1973
33,611.62
1974
40,017.33
Petitioner received all of the net income from rental of the properties in each of the foregoing years, and one-half of such amounts are includible as income to petitioner for those years. Petitioner and his wife sold the rental property at 410 Pine Grove Road, Industry, Pennsylvania, to Lawrence and Alice A. Kane for $27,600 in 1971. Petitioner and his wife purchased that property for $19,000. Respondent had allowed depreciation of $19,000 in previous years, and, therefore, petitioners had an adjusted basis of zero in the property when it was sold. Petitioner received all of the proceeds from the sale of the property described above, and the amount of long-term capital gain recognized by petitioner and his wife is $27,600, one-half of which must be included in their income for the taxable year 1971. Petitioner is, therefore, taxable to the extent of $6,900. On October 16, 1972, Revenue Agent Stephen Stopchick contacted petitioner by telephone at Beaver Valley Volkswagen, Inc. Mr. Stopchick was assigned to audit the document submitted *373 by petitioner for the taxable year 1970. He told petitioner that he would like to meet with him and go over his books and records for 1970. Petitioner refused to answer the revenue agent's request on self-incrimination grounds. Petitioner then cited various amendments to the Constitution and brought the conversation to an abrupt conclusion. In March 1973, Special Agent Thomas Plasko served a summons upon petitioner for the corporate records of Beaver Valley Volkswagen, Inc. The summons was served on petitioner at his business premises. Petitioner told Mr. Plasko and his acting supervisor to leave because they had no appointment. As a result of the service of the summons, petitioner sued the agents for trespass. The lawsuit was dismissed. Brobeck v. Plasko, an unreported case ( W.D. Pa. 1974, 74-2 USTC par. 9731, 34 AFTR 2d par. 74-5296). On April 11, 1973, petitioner appeared at an Internal Revenue Service office in response to the summons, but he was not cooperative. Petitioner was accompanied by approximately 30 associates, a few of whom carried tape recorders and cameras. Petitioner declined to produce records or furnish information and invoked his *374 Fifth Amendment rights. He said that he had no records to produce in response to the summons or any other records to produce at that time. Summons enforcement proceedings were commenced in the United States District Court for the Western District of Pennsylvania. Petitioner was held in contempt in that proceeding and was incarcerated for approximately five and one-half months. United States v. Brobeck, 363 F. Supp. 1035 (W.D. Pa. 1973) (Memorandum), an unreported case ( W.D. Pa. 1973, 73-2 USTC par. 9753, 32 AFTR 2d par. 73-5344) (Memorandum and Order), affd. 491 F.2d 751 (3d Cir. 1973), cert. denied 416 U.S. 984 (1974); United States v. Brobeck, an unreported case ( W.D. Pa. 1974, 74-2 USTC par. 9792, 34 AFTR 2d par. 74-5295). Although Mr. Plasko had a number of contacts with petitioner during the investigation, petitioner offered no assistance in determining his income for 1970 and 1971 or that of Beaver Valley Volkswagen, Inc., for the years 1970 and 1971. Petitioner was aware that he was required to file Federal income tax returns for the taxable years 1970 through 1974.Petitioner willfully refused *375 to comply with the rules and regulations governing the filing of Federal income tax returns for the taxable years 1970 through 1974. Petitioner failed to file Federal income tax returns for the taxable years 1970 through 1974. The documents which petitioner did submit for those years omitted substantially all of his income and petitioner paid no income tax on the omitted income. Petitioner failed to cooperate with the investigation of his tax liability. Petitioner attempted to conceal his income and that of Beaver Valley Volkswagen, Inc., from the Commissioner and his agents. Petitioner intended to evade taxes which he knew or believed to be owing for the taxable years 1970 through 1974. Based upon his investigations, the Commissioner determined that there were deficiencies in tax against petitioner for the taxable years 1970 through 1974. The Commissioner also determined that part of the underpayment of tax for each year was due to fraud and accordingly imposed additions to tax under section 6653(b). The Commissioner also determined that petitioner underpaid his estimated tax for each year and accordingly imposed additions to tax under section 6654. In addition, he determined *376 that petitioner was liable as transferee of the assets of Beaver Valley Volkswagen, Inc., for the income tax liability of the transferor for the taxable period from January 1, 1971, to July 19, 1971, in the amount of $13,075.84 and an addition to tax under the provisions of section 6653(b) of the Code of the amount of $6,537.92 for the same taxable period. ULTIMATE FINDINGS OF FACT Petitioner was a transferee of property of Beaver Valley Volkswagen, Inc., on and after July 19, 1971. Petitioner underpaid his Federal income tax for the taxable years 1970, 1971, 1972, 1973, and 1974, and part of the underpayment for each year was due to fraud. Petitioner underpaid his estimated tax for the taxable years 1970, 1971, 1973, and 1974. OPINION The facts which have been deemed admitted in this case are conclusively established. Rule 90(e), Tax Court Rules of Practice and Procedure. As for the factual issues which are not disposed of by the admissions, respondent bears the burden of proving that the additions to tax under section 6653(b) should be imposed and that petitioner is a transferee of property of Beaver Valley Volkswagen, Inc.; petitioner bears the burden of proving *377 that the additions to tax under section 6654 and the deficiencies in tax were incorrectly determined by the Commissioner. Petitioner contends that the documents which he filed with the District Director of Internal Revenue, Pittsburgh, Pennsylvania, constitute Federal income tax returns. Respondent disagrees. The documents filed by petitioner as Federal income tax returns for the taxable years 1970, 1971, 1972, 1973, and 1974 bear a striking resemblance to those which were analyzed in Cupp v. Commissioner, 65 T.C. 68 (1975), affd. 559 F.2d 1207 (3d Cir. 1977). Based upon the reasoning expressed in our opinion in the Cupp case, we hold that petitioner willfully refused to comply with the rules and regulations governing the filing of Federal income tax returns, and that none of the documents filed by petitioner for the taxable years 1970, 1971, 1972, 1973, and 1974 constitute Federal income tax returns under section 6012. [4] Therefore, because no returns were filed, the statute of limitations does not bar the assessment and collection of any deficiency in tax or addition to tax for the taxable years in issue. Sec. 6501(c)(3). [5]
*378 With respect to the deficiencies determined by the Commissioner and the additions to tax imposed pursuant to section 6654, petitioner bears the burden of proof of this proceeding. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Whether we focus on petitioner's responses to respondent's requests for admissions or his recalcitrance to proceed with trial or his dubious lack of memory when testifying at trial, we are faced with a complete failure on petitioner's part to produce evidence which would disprove the deficiencies or the additions to tax under section 6654. [6] We therefore find deficiencies in tax and additions to the tax under section 6654 in the amounts mandated by the facts which are deemed admitted. [7]
*379 The facts deemed admitted would result in taxing to petitioner the entire gain from the liquidation of Beaver Valley Volkswagen, Inc., all of the rental income from property owned jointly with his wife and all of the gain realized from the sale of rental property jointly owned with his wife located at 410 Pine Grove Road, Industry, Pennsylvania. Nevertheless, we note that the income tax liabilities of petitioner's wife, Marguerite K. Brobeck, have been redetermined by the Court in Tax Court Memorandum Opinion 1980-192, filed on June 2, 1980. In that case petitioner's wife was taxed on her share of such items and we have, therefore, taxed Petitioner Harold W. Brobeck only on his share; i.e., his share of the gain on liquidation of the corporation based on the percentage of his stock ownership and one-half of the rental income and one-half of the gain from the sale of real estate because of his one-half ownership of the property producing the rental income and the real property sold.
Respondent bears the burden of proving that petitioner was a transferee of property of Beaver Valley Volkswagen, Inc. Sec. 6902(a). Among the facts which have been deemed admitted are facts which establish *380 a prima facie case for respondent. That is, respondent has carried his burden of proof on this issue by showing that there was a transfer of property from Beaver Valley Volkswagen, Inc., to petitioner, that the transfer was made for inadequate consideration, that Beaver Valley Volkswagen, Inc., became insolvent by reason of the transfer, that Beaver Valley Volkswagen, Inc., has not paid the tax and additions thereto, and the fair market value of the property transferred. Moran v. Commissioner, 45 T.C. 528 (1966). Petitioner was a transferee of property of Beaver Valley Volkswagen, Inc. We, therefore, find that petitioner is subject to transferee liability for the deficiency in tax and any addition to tax of Beaver Valley Volkswagen, Inc., for the taxable period July 1, 1971, to July 19, 1971. The next issue to be decided is whether petitioner is liable for additions to tax under section 6653(b). The question is one of fact, Stratton v. Commissioner, 54 T.C. 255, 284 (1970), and respondent bears the burden of proof on that issue pursuant to section 7454(a) and Rule 142(b), Tax Court Rules of Practice and Procedure. To prove fraud, it must be *381 shown that the taxpayer intended to evade taxes which he knew or believe to be owing and that there is an underpayment of tax. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). The requisite intent may be inferred from circumstantial evidence, such as willful failure to file tax returns, Powell v. Granquist, 252 F.2d 56 (9th Cir. 1958); or the consistent failure to report income, Schwarzkopf v. Commissioner, 246 F.2d 731 (3d Cir. 1957); or failure to cooperate with the government during an investigation of tax liability, Estate of Beck v. Commissioner, 56 T.C. 297 (1971); or conduct calculated to mislead or conceal, Beaver v. Commissioner,55 T.C. 85 (1970). See Gajewski v. Commissioner,67 T.C. 181 (1976), affd. 578 F.2d 1383 (8th Cir. 1978). Based upon the entire record in this case, we conclude that respondent has carried his burden of proof by clear and convincing evidence for each of the years in issue. From the returns filed by petitioner for the taxable years 1968 and 1969, it is clear that petitioner was aware of the requirements for filing Federal *382 income tax returns. Nevertheless, petitioner failed to file Federal income tax returns for the taxable years 1970 through 1974. The documents which petitioner did file omitted substantially all of his income. Petitioner refused to cooperate with the investigation of his tax liability, even after the government instituted summons enforcement proceedings in the United States District Court for the Western District of Pennsylvania and petitioner was held in contempt and incarcerated. Petitioner attempted to conceal his income and that of Beaver Valley Volkswagen, Inc., from the Commissioner and his agents. Petitioner intended to evade taxes which he knew or believed to be owing. Part of the underpayment of tax for each of the years before us was due to fraud. By reference to statements which were appended to his alleged Federal income tax returns for the years in issue, petitioner has raised many spurious objections to a holding in respondent's favor. Among those objections are the following: the Form 1040 as in use for the years in issue violates petitioner's rights under the Constitution, amendments thereto, and the common law; Treasury regulations are unconstitutional and *383 void because they violate the Constitution and the Declaration of Independence; Federal Reserve Notes do not constitute dollars; and the Federal income tax laws are unconstitutional because they infringe upon the Constitutional rights of the populace. Suffice it to say that petitioner's arguments are not novel and in other cases this Court and other courts have uniformly held them to be without merit. [8] We will not depart from that path in this opinion, and we reject petitioner's contentions. *384 To reflect concessions by respondent regarding petitioner's allowable standard deduction and personal exemption for each year, Decisions will be entered under Rule 155.
Footnotes
1. The following cases have been consolidated for trial, brief, and opinion: Harold W. Brobeck, docket No. 7849-76; Harold W. Brobeck, Transferee, docket No. 7309-77; and Harold W. Brobeck, docket No. 7424-77.↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. See United States v. Brobeck, 363 F. Supp. 1035 (W.D. Pa. 1973) (Memorandum), an unreported case ( W.D. Pa. 1973, 73-2 USTC par. 9753, 32 AFTR 2d par. 73-5344) (Memorandum and Order), affd. 491 F.2d 751 (3d Cir. 1973), cert. denied 416 U.S. 984 (1974); United States v. Brobeck, an unreported case ( W.D. Pa. 1974, 74-2 USTC par. 9792, 34 AFTR 2d par. 74-5295); Brobeck v. Plasko↩, an unreported case ( W.D. Pa. 1974, 74-2 USTC par. 9731, 34 AFTR 2d par. 74-5296).
4. See Cupp. v. Commissioner, 65 T.C. 68, 77-81 (1975); United States v. Daly, 481 F.2d 28 (8th Cir. 1973); United States v. Porth, 426 F.2d 519 (10th Cir. 1970), cert. denied 400 U.S. 824 (1970); Gajewski v. Commissioner, 67 T.C. 181 (1976), affd. 578 F.2d 1383 (8th Cir. 1978); Hatfield v. Commissioner, 68 T.C. 895 (1977); Collins v. Commissioner, T.C. Memo. 1980-133; Anderson v. Commissioner, T.C. Memo. 1978-444↩. 5. We note that Beaver Valley Volkswagen, Inc., failed to file a Federal income tax return which reported the results of operations during 1971. Therefore, the statute of limitations will not bar the assessment and collection of any deficiency in the corporation's tax or of any addition to its tax for the taxable year 1971.↩
6. Petitioner's motion for a new trial, which he renewed in his brief, is denied. During the course of this proceeding, petitioner has relentlessly sought detours which would delay the decision of his case. Petitioner has failed to persuade us that he is entitled to a new trial or that his motion has a purpose other than further delay. See also footnote 3, supra↩. 7. Anderson v. Commissioner, T.C. Memo. 1978-444↩.
8. United States v. Daly, 481 F.2d 28 (8th Cir. 1973), cert. denied 414 U.S. 1064 (1973); United States v. Porth, 426 F.2d 519 (10th Cir. 1970), cert. denied 400 U.S. 824 (1970); Heligman v. United States, 407 F.2d 448 (8th Cir. 1969), cert. denied 395 U.S. 977 (1969); Olshausen v. Commissioner, 273 F.2d 23 (9th Cir. 1959), cert. denied 363 U.S. 820 (1960); Porth v. Brodrick, 214 F.2d 925 (10th Cir. 1954); Hatfield v. Commissioner, 68 T.C. 895 (1977); Gajewski v. Commissioner, 67 T.C. 181 (1976), affd. 578 F.2d 1383 (8th Cir. 1978); Cupp v. Commissioner, 65 T.C. 68 (1975), affd. 559 F.2d 1207 (3d Cir. 1977); Hosking v. Commissioner, 62 T.C. 635 (1974); Muste v. Commissioner, 35 T.C. 913 (1961); Adams v. American Bar Association, 400 F. Supp. 219 (E.D. Pa. 1975); Cupp v. Levi, an unreported case ( W.D. Pa. 1975, 75-2 USTC par. 9670, 36 AFTR 2d par. 75-5215; Brobeck v. United States, 376 F. Supp. 494 (W.D. Pa. 1974); Hartman v. Switzer, 376 F. Supp. 486 (W.D. Pa. 1974); Cupp v. Secretary of the Treasury et al, an unreported case ( W.D. Pa. 1973, 74-2 USTC par. 9610, 34 AFTR 2d 74-5302), affd. 493 F.2d 1400↩ (3d Cir. 1974).